UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY- LONDON DIV.
CASE NO.: 6:04-CV-15 KKC

Eastern District of Kentucky
FILED
JUN 15 2004
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

MICHAEL H. WEISSER PLAINTIFF

V.

CP HAZARD ASSOCIATES LIMITED PARTNERSHIP and WAL-MART REAL ESTATE BUSINESS TRUST DEFENDANTS

---

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

---

The Plaintiff, **Michael H. Weisser ("Weisser")**, respectfully submits this memorandum in support of his motion for summary judgment.

## INTRODUCTION

This action arises from a dispute between the parties concerning competing contracts. Each of these contracts concerns real property owned by the defendant CP Hazard Associates Limited ("CPH") but leased by the defendant Wal-Mart Real Estate business Trust ("Wal-Mart"), located in Hazard, Kentucky. Wal-Mart's new super center is located on the subject property, with Wal-Mart and CPH entering the subject lease on November 27, 2002. Under this lease, CPH retains the right to sell the subject property, subject to Wal-Mart's right-of-first refusal.

## FACTS

On November 27, 2002, CPH and Wal-Mart entered into a lease agreement ("the Wal-Mart lease") in which Wal-Mart leased from CPH certain real estate,

FARMER, KELLEY, BROWN, WILLIAMS & BREEDING
ATTORNEYS AT LAW
FIFTH STREET • P.O. DRAWER 490
LONDON, KENTUCKY 40743-0490

buildings and improvements ("the Demised Premises"), located in Hazard, Perry County, Kentucky. (Wal-Mart lease attached at Exhibit 1). Significantly, Wal-Mart prepared the Wal-Mart lease. (See Wal-Mart's Response to Plaintiff's Request for Admissions with Interrogatory, Request No. 1 at 2; Wal-Mart Answer p. 1, 5th Defense, ¶ 1 compared with amended complaint numerical ¶ 10).

The Wal-Mart lease provides the following "right of first refusal" to Wal-Mart:

> In the event [CPH] enters into an agreement to sell the Demised Premises to an unrelated third party (said agreement is hereafter referred to as the "Sales Agreement"), it shall give [Wal-Mart] a Right-of-First-Refusal to purchase the Demised Premises, **on the same terms and conditions provided in the Sales Agreement**. [Wal-Mart] shall have twenty (20) days after receipt of a copy of such agreement to exercise such right, which [Wal-Mart] shall do by executing and delivering to [CPH] an agreement containing **the same business terms and conditions as the Sales Agreement**. If [Wal-Mart] shall not deliver such executed agreement to [CPH] within such twenty (20) days, then [Wal-Mart] shall be deemed to have failed to exercise such right with respect to the Sales Agreement.

(Wal-Mart lease at 1, Section 32, ¶ N, p. 19, emphasis added).

On October 28, 2003, Weisser and CPH entered into an Agreement of Purchase and Sale (Agreement of Purchase and Sale at 3), whereby CPH agreed to sell and convey to Weisser the same Demised Premises located in Hazard, Perry County, Kentucky, which were the subject of the Wal-Mart lease. (See CP Hazard's Responses to Plaintiff's Requests for Admissions, Requests No. 1 at 4; Wal-Mart's Response to Plaintiff's Second Request for Admissions, Request No. 2 at 5). The Agreement of Purchase and Sale constituted a *bona fide* offer to purchase as provided for under the terms of the Wal-Mart lease. Notably, the Areement between Weisser

FARMER,
KELLEY, BROWN,
WILLIAMS & BREEDING
ATTORNEYS AT LAW
FIFTH STREET • P.O. DRAWER 490
LONDON, KENTUCKY 40743-0490

and CPH references the Wal-Mart lease and specifically recognizes Wal-Mart's right of first refusal, noting that Wal-Mart was required to make a mirror offer to that of Weisser, exercising its right of first refusal on the "same business terms and conditions," as contained in Weisser's *bona fide* offer to purchase from CPH. (See Agreement of Purchase and Sale at 3, Section 12.02, p. 13; Wal-Mart lease at 1, Section 32, ¶ N, p. 19). Wal-Mart received a copy of the Weisser-CPH contract on October 31, 2003. (Wal-Mart's Answers to Interrogatory No. 2 at 5).

On November 11, 2003, Wal-Mart tendered to CPH a proposed Purchase Agreement.[1] (Purchase Agreement attached at 7). But Wal-Mart's proposed Purchase Agreement does not contain "the same terms and conditions" as the Agreement of Purchase and Sale between Weisser and CPH, as required by the option to purchase contained in the Wal-Mart lease. Examples of how these contracts materially differ are as follows:

1. Wal-Mart's proposed purchase agreement grants it a sixty (60) day right-of-inspection, which allows it to withdraw from the contract at any time during the sixty (60) day period. (Purchase Agreement at 6, p. 13-14, ¶ 31). By contrast, the Weisser contract does not provide for any inspection, Weisser having unconditionally accepted the premises and title.

2. Wal-Mart's proposed purchase agreement provides that Wal-Mart's default under the contract simply allows a cancellation of contract. (Purchase

[1] This was Wal-Mart's only attempted exercise of its option. See CPH's Response to Weisser's Second Requests for Admissions, Request No. 6 (Request: "Admit that Wal-Mart never modified or changed its proposed purchase agreement." Response: "Denied as stated. It is admitted that Wal-Mart has not submitted to CPH an executed, modified or changed Purchase Agreement" Attached as Exhibit 6).

FARMER, KELLEY, BROWN, WILLIAMS & BREEDING
ATTORNEYS AT LAW
FIFTH STREET • P.O. DRAWER 490
LONDON, KENTUCKY 40743-0490

Agreement at 6, p. 6, ¶ 11). By contrast, the Weisser contract provides that Weisser's *five hundred thousand dollar ($500,000.00)* good faith deposit (in the form of an irrevocable letter of credit) is forfeited to CPH in the event of Weisser's default. (See Agreement of Purchase and Sale at 3, p. 11, Section 9.04).

3. Wal-Mart's proposed purchase agreement requires CPH to make representations regarding the environmental condition of the property now and in the future and requires that CPH remain obligated to pay for any costs necessary to remedy any environmental problems. (Purchase Agreement at 6, p. 10, ¶ 26). By contrast, the Weisser-CPH agreement does not require CPH to make any environmental representations, nor does it place any liability on CPH to remedy any environmental problems, now or in the future.

4. Under the Wal-Mart proposal, Wal-Mart offers to place *five hundred thousand dollars* ($500,000.00) in the hands of an escrow agent whereas the Weisser-CPH agreement compels Weisser to give CPH a *five hundred thousand dollar $500,000.00) irrevocable* letter of credit.[2] (Purchase Agreement at 6, p. 2, ¶ 2.A; Agreement of Purchase and Sale at 3, p. 2, Section 2.00.A). In other words, CPH could immediately draw upon the irrevocable letter of credit whereas it would not have such access to Wal-Mart's deposit placed with an escrow agent. The parties acknowledge that the contract provided by Wal-Mart to CPH for the purchase was

[2] CPH has admitted that the letter of credit issued by Northern Trust Bank on behalf of Weisser was in a form satisfactory to CPH. See CP Hazard's Responses to Plaintiff's Requests for Admissions at 4, Request No. 2 (response served May 17, 2004).

FARMER, KELLEY, BROWN, WILLIAMS & BREEDING
ATTORNEYS AT LAW
FIFTH STREET • P.O. DRAWER 490
LONDON, KENTUCKY 40743-0490

much less favorable than those within the Weisser-CPH Agreement. (Talbot dep. pp. 53-54).

On January 14, 2004, Weisser filed this action against CPH and Wal-Mart.[3] Weisser's complaint alleges that he is entitled to a declaration by the court as to the rights and duties of the parties as based upon the CPH/Wal-Mart lease agreement, which grants Wal-Mart a right-of-first refusal to purchase the subject property, provided that it exercised that option to purchase, "on the same terms and conditions provided in the Sales Agreement," entered into by the intended purchaser. (Wal-Mart lease at 1, p. 19 ¶ 32, Section N). Weisser's Complaint also seeks specific performance as to the Agreement of Purchase and Sale that he entered with CPH on October 28, 2003. Furthermore, Weisser seeks to recover the difference between the now-increased interest rate compared with that he could have received at the time of the intended closing but for Wal-Mart's invalid exercise of its option. Finally, Weisser seeks, pursuant to the contract, to be reimbursed by CPH for his attorney fees expended in litigating this action.

## ARGUMENT

1. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

[3] Weisser's original complaint inadvertently identified CPH Associates Limited Partnership as a defendant, so Weisser filed an amended complaint on January 15, 2004, correcting this error and substituting CP Hazard Associates Limited Partnership for CPH Associates & Limited Partnership.

FARMER, KELLEY, BROWN, WILLIAMS & BREEDING
ATTORNEYS AT LAW
FIFTH STREET • P.O. DRAWER 490
LONDON, KENTUCKY 40743-0490

to a judgment as a matter of law." FS Investments, Inc. v. Asset Guaranty Insurance Co., 196 F. Supp. 2d 491, 496 (E.D. Ky. 2002) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In reviewing a motion for summary judgment, the "Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). The evidence, the facts, and any inferences that may permissibly be drawn therefrom are to be construed in a light most favorable to the non-moving party. FS Investments, 196 F. Supp. 2d at 496.

Once the moving party has met this burden, the non-moving party is required to present sufficient probative evidence in support of its complaint to prevent summary judgment from being granted. Anderson, 477 U.S. at 249-50. "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." Id. at 252.

2. Interpretation of Contracts

"The construction as well as the meaning and effect of a legal instrument, however compiled, is a matter of law for the court." Morganfield National Bank v. Damien Elder & Sons, 836 S.W.2d 893, 895 (Ky. 1992) (citing Equitable Life Assurance Society of the United States v. Wells, 101 F.2d 608 (6th Cir. 1939)). "In the absence of ambiguity a written instrument will be enforced strictly according to its


FARMER, KELLEY, BROWN, WILLIAMS & BREEDING
ATTORNEYS AT LAW
FIFTH STREET • P.O. DRAWER 490
LONDON, KENTUCKY 40743-0490

terms, and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." Frear v. P.T.A. Industries, Inc., 103 S.W.3d 99, 106 (Ky. 2003) (citing O'Bryan v. Massey-Ferguson, Inc., 413 S.W.2d 891, 893 (Ky. 1966) and Hoheimer v. Hoheimer, 30 S.W.3d 176, 178 (Ky. 2000)).

Wal-Mart failed to properly exercise its right of first refusal. Kentucky law is clear that a prospective purchaser, such as Weisser, has the right to require strict compliance by a lessee in the exercise of the terms in a right of first refusal. Jones v. White Sulphur Springs Farm, Inc., 605 S.W.2d 38, 41 (Ky. App. 1980).

Indeed, Jones is strikingly similar to the instant action. In Jones, the owners of a farm, the Joneses, leased the farm to White Sulphur Springs Farm, Inc. (hereinafter "White Sulphur"). White Sulphur's lease gave it a right of first refusal in the event that the Joneses chose to sell the farm. The Joneses entertained an offer to buy the farm from J.B. Marston, Jr. White Sulphur attempted to exercise its right of first refusal. Id. at 39-40. There were a number of differences between the Marston offer and the White Sulphur response, however. The White Sulphur terms that were at variance with the Marston offer "included a provision allowing substitution of an escrowed cash fund as security on the notes in lieu of a lien on the property itself and a provision nullifying the Joneses' obligation to make a $4,000.00 payment in lieu of repair of tornado damage." Id. at 40. The Court concluded that these differences were material. Id. at 41.

FARMER,
KELLEY, BROWN,
LLIAMS & BREEDING
TORNEYS AT LAW
FIFTH STREET • P.O. DRAWER 490
NDON, KENTUCKY 40743-0490

In analyzing whether White Sulphur had properly exercised its right of first refusal, the Court adopted the following rule:

> A contract provision giving simply the "right of first refusal" (as here), without any qualifying terms, means according to general custom and practice that the holder has the right to elect to take the property **at the same price and on the same terms and conditions as those of an offer by a third person that the owner is willing to accept**. The agreement is not void for failure to specify definite terms and conditions of the acquisition, because they will be supplied by the third person's offer. However, this presupposes that the holder of the right of first refusal can and will take the property on the same terms and conditions set out in the third person's offer. Of course if the holder of the right of first refusal cannot meet exactly the terms and conditions of the third person's offer, minor variations which obviously constitute no substantial departure should be allowed. . . . But **if a material variation from *bona fide* terms and conditions should be necessary the right of refusal will fail as impossible of performance.**

Id. at 41 (quoting Brownies Creek Collieries, Inc. v. Asher Coal Mining Co., 417 S.W.2d 249, 252 (Ky. 1967)).

The Court noted that the variant terms in the White Sulphur offer made it less than Marston's offer, and thus did not constitute an effective exercise of the right of first refusal. Jones, 605 S.W.2d at 41.

In the instant case, it is clear that the proposal made by Wal-Mart is materially different from the Weisser offer. As previously outlined, Wal-Mart's proposal maintains a sixty (60) day right of inspection with the right to withdraw from the contract anytime during the sixty (60) days, while the Weisser contract has no inspection period, Weisser having accepted the premises and the condition of title unconditionally. Second, a default by Wal-Mart under the contract with CPH cancels the contract, while the Weisser contract provides that Weisser's $500,000.00 good

FARMER, KELLEY, BROWN, WILLIAMS & BREEDING
ATTORNEYS AT LAW
FIFTH STREET • P.O. DRAWER 490
LONDON, KENTUCKY 40743-0490

faith deposit is forfeited to CPH in the event of his own default. Third, the Wal-Mart contract requires CPH to make representations regarding the environmental condition of the property and requires that CPH indemnify Wal-Mart for any costs necessary to remediate environmental problems. The Weisser contract contains no similar obligations for CPH. Finally, Wal-Mart proposes to put $500,000.00 in a deposit or in a letter of credit, but in favor of an estoppel agent. Under the Weisser proposal, Weisser has executed and delivered to CPH a $500,000.00 Irrevocable Letter of Credit.

The differences in the Wal-Mart proposal and the Weisser-CPH agreement are at least as significant as the differences discussed in Jones, and, therefore, the differences are material. And the variant terms make it inferior to the Weisser Agreement of Purchase and Sale. Jones, 605 S.W.2d 38, 41 (1980). Further, Wal-Mart's proposal does not contain the "same terms and conditions" as the Weisser proposal, rendering Wal-Mart's offer insufficient as a matter of law.

"[B]ecause the exercise of a right of first refusal obligates a party to enter into and close a deal on the basis of a preexisting offer, **any attempt to renegotiate such terms is fundamentally inconsistent with the exercise of a first refusal right.**" Seessel Holdings v. Fleming Cos., Inc., 949 F. Supp. 572, 578 (W.D. Tenn. 1996) (emphasis added).

CPH, upon receipt of Wal-Mart's proposed Purchase Agreement, informed Wal-Mart that its proposal was not acceptable. Nevertheless, Wal-Mart did not amend the offer.

FARMER, KELLEY, BROWN, WILLIAMS & BREEDING
ATTORNEYS AT LAW
FIFTH STREET • P.O. DRAWER 490
LONDON, KENTUCKY 40743-0490

Wal-Mart apparently did not consider itself "obligate[d] . . . to enter into and close a deal on the basis of [Weisser's] offer." Seessel Holdings, 949 F. Supp. at 578. Yet that is the essence of a right of first refusal:

> [W]here the right holder has proffered an alternative or substitute agreement, the issue of whether a right of first refusal has been properly exercised is not whether the right holder properly notified the parties of its intention to enter into a final contract. **Merely electing to exercise a first refusal right is not sufficient if a right holder subsequently refuses to timely enter into a contract matching the terms of the third party agreement.**

Id. (emphasis added) (citations omitted).

Wal-Mart's proposal was essentially a renegotiation of the Weisser proposal, and failed to match the terms of the Weisser proposal. Because the Wal-Mart proposal materially varied from the Weisser offer, Wal-Mart's right of first refusal failed as impossible of performance. Jones, 605 S.W.2d at 41; Brownies Creek, 417 S.W.2d at 252. Additionally, no compliant proposal was tendered by Wal-Mart within the twenty-day period called for in the Wal-Mart lease, which, it must be recalled, was drafted by Wal-Mart. See Pulliam v. Wiggins, 580 S.W.2d 228, 231 (Ky. 1978) ("a contract must be construed more strongly against the party who prepared it"). Consequently, Wal-Mart failed to properly exercise its right of first refusal, and Weisser is entitled to specific performance pursuant to the terms outlined in his agreement with CP Hazard. As such, Weisser is entitled to summary judgment. See Jones, 605 S.W.2d at 40, 43 (affirming the judgment of the circuit court, which granted Marston specific performance).

## CONCLUSION

FARMER, KELLEY, BROWN, WILLIAMS & BREEDING
ATTORNEYS AT LAW
FIFTH STREET • P.O. DRAWER 490
LONDON, KENTUCKY 40743-0490

As based on the grounds provided within this memorandum, Weisser should be granted summary judgment against the defendants. More particularly, the court should compel CPH to convey the real property to Weisser. By post-judgment filings and/or hearing, the court should decide the issues regarding interest and attorney fees. Fieldtorf, Inc. v. Southwest Recreational Industries, Inc., 212 F.R.D. 341, 343 (E.D. Ky. 2003) ("while divested of jurisdiction over the substantive matters in a case, a district court is in the best position to decide certain collateral matters such as fees, costs, and sanctions). A proposed order accompanies this memorandum.

Respectfully submitted,

Farmer, Kelley, Brown, Williams & Breeding
502 West Fifth Street
P.O. Drawer 490
London, Kentucky 40743-0490
Telephone: (606) 878-7640
Facsimile: (606) 878-2364

BY: Bradford L. Breeding
JOHN F. KELLEY, JR.
BRADFORD L. BREEDING
HAROLD F. DYCHE, II
Counsel for Plaintiff, Michael H. Weisser

**CERTIFICATE OF SERVICE**

I hereby certify that the original of the foregoing was tendered for filing by mailing same, first class postage prepaid to the following:
U.S. District Court Clerk
310 S. Main Street, Room 215
London, KY 40741

I hereby certify that true and correct copies of the foregoing was served by mailing same, first class postage prepaid to the following:

ARMER, KELLEY,
ROWN & WILLIAMS
TTORNEYS AT LAW
W. FIFTH STREET • P.O. DRAWER 490
ONDON, KENTUCKY 40743-0490

John Woodall, Esq.
McBrayer, McGinnis, Leslie & Kirkland, PLLC
State Nat'l. Bank Bldg., Ste. 300
Frankfort, KY 40602-1100

W. Craig Robertson, III
Wyatt, Tarrant & Combs, LLP
250 W. Main Street, Ste. 1600
Lexington, KY 40507-1746

This the 15th day of June 2004.

Bradford L. Breeding, Esq.

BLB/cac: 060904 Memor in Sup of Mot for Summary Judgment (Weisser v. CP Hazard Assoc. & Wal-Mart)

'ARMER, KELLEY,
ROWN & WILLIAMS
TTORNEYS AT LAW
W. FIFTH STREET • P.O. DRAWER 490
.ONDON, KENTUCKY 40743-0490