Eastern District of Kentucky
**FILED**

JUN 3 0 2004

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT LONDON
CIVIL ACTION NO. 6:04-CV-15-KKC

MICHAEL H. WEISSER                                      PLAINTIFF

**WAL-MART'S MEMORANDUM IN SUPPORT OF MOTION**
v.        **FOR SUMMARY JUDGMENT AND RESPONSE TO**
**WEISSER'S MOTION FOR SUMMARY JUDGMENT**

CP HAZARD ASSOCIATES, LTD                              DEFENDANTS
PARTNERSHIP; and WAL-MART
REAL ESTATE BUSINESS TRUST

Defendant Wal-Mart Real Estate Business Trust ("Wal-Mart"), through counsel, and pursuant to Fed. R. Civ. P. 56, respectfully submits this Memorandum in Support of its Motion for Summary Judgment and in Response to the Motion for Summary Judgment of Plaintiff Michael H. Weisser ("Weisser").

## STATEMENT OF POINTS AND AUTHORITIES

I.      INTRODUCTION.................................................................   3

II.     STATEMENT OF THE CASE.............................................   3-6

III.    ARGUMENT....................................................................   6-17

        Summary Judgment Standard...............................................   6

            *Fed. R. Civ. P. 56(c)*..........................................................6

        A.      **Wal-Mart Properly Exercised Its Right of First Refusal.........   6-13**

                *Brownies Creek Collieries, Inc. v. Asher Coal Mining Co.,*
                Ky., 417 S.W.2d 249 (1967)...............................6-9, 11-12

                *Beavers Service, Inc. v. Norris,* 470 A.2d 312
                (D.C. Ct. App. 1983).........................................................9

                *Northwest Television Club, Inc. v. Gross Seattle, Inc.,*
                634 P.2d 837 (Wash. 1981)......................................10, 12

                *Vincent v. Doebert,* 539 N.E.2d 856 (Ill. App. 1989)...............12

                *Urban Hotel Management Corp. v. Main & Washington
                Joint Venture,* 494 N.E.2d 334 (Ind. App. 1986)...................12

        B.      **Weisser's Purchase Agreement Cannot Be Viewed In a Vacuum,
                But Must Be Examined in Conjunction With the Letter of Intent.
                When Weisser's Agreement Is Viewed In Whole, Rather Than In
                Part, Any Difference Between the Weisser Agreement and the
                Wal-Mart Agreement Disappears.......................................... 13-15**

                *FS Investments, Inc. v. Asset Guaranty Ins. Co.,*
                196 F. Supp. 2d 491 (E.D. Ky. 2002)................................13

        C.      **The Weisser Agreement Is Not Enforceable................................   15-17**

                *Jones v. White Sulphur Springs Farm, Inc.,* Ky. App.,
                605 S.W.2d 38 (1980)....................................................16

                *FS Investments, Inc., supra*.........................................16-17

        D.      **Weisser Is Not Entitled To An Increased Interest Rate.........   17-18**

IV.     CONCLUSION................................................................   18

## I.     INTRODUCTION

Weisser claims that he is entitled to purchase property from Defendant CP Hazard Associates, Ltd Partnership ("CP Hazard") pursuant to a contract of sale with CP Hazard. However, Weisser's contract with CP Hazard is unenforceable for two reasons. First, Wal-Mart was given a right of first refusal in its lease of this property from CP Hazard; since Wal-Mart properly exercised this right, any right that Weisser had under his contract to purchase the property was terminated. Second, Weisser defaulted on his obligations under his contract with CP Hazard, and, therefore, he has no binding contract to enforce. For these reasons, summary judgment should be granted in favor of Wal-Mart.

## II.    STATEMENT OF THE CASE

This case concerns an approximately twenty-two (22) acre parcel of land located in Perry County, Kentucky, near the City of Hazard (the "Property"). CP Hazard purchased the Property in the fall of 2002, and then leased it to Wal-Mart on November 27, 2002. [Attached hereto as Exhibit A is the Lease Agreement between CP Hazard and Wal-Mart ("Lease").] Section 32.N. of the Lease granted to Wal-Mart a right of first refusal if CP Hazard ever decided to sell the Property. It states as follows:

> In the event Lessor enters into an agreement to sell [the Property] to an unrelated third party (said agreement is hereafter referred to as the "Sales Agreement"), it shall give Lessee a Right-of-First-Refusal to purchase [the Property], on the same terms and conditions provided in the Sales Agreement. Lessee shall have twenty (20) days after receipt of a copy of such agreement to exercise such right, which Lessee shall do by executing and delivering to Lessor an agreement containing the same business terms and conditions as the Sales Agreement. If Lessee shall not deliver such executed agreement to Lessor within such twenty (20) day period, then Lessee shall be deemed to

3

> have failed to exercise such right with respect to the Sales
> Agreement.

Sometime in early 2003, Miles Cullom, the principal of CP Hazard, contacted Robert Talbott, a real estate developer and broker, to gain his assistance in selling the Property. [Miles Cullom Depo., pp. 12, 22.] In the fall of 2003, Mr. Talbott told Mr. Cullom that he had located a potential buyer for the Property, Michael H. Weisser. [Cullom Depo., p. 16.] On October 2, 2003, Weisser sent Cullom a letter of intent to purchase the Property, which Cullom then signed on October 7, 2003. [See "Letter of Intent" attached hereto as Exhibit B.]

The Letter of Intent gave Weisser a "Review Period" until October 30, 2003, whereby he could inspect and perform whatever due diligence he deemed necessary with regard to the Property. [See Exhibit B, Sections 3 & 5.] Section 4 of the Letter of Intent also stated that CP Hazard would provide several documents, reports and information for Weisser to review during the Review Period. On October 8, 2003, CP Hazard complied with Section 4 of the Letter by sending Weisser copies of a survey, title policy, standard form agreement, payment and performance bond, utility letter, zoning letter, the Wal-Mart Lease Agreement, and an environmental report. [See October 8, 2003 cover letter from Danielle Hicks to Weisser, attached hereto as Exhibit C.]

On October 24, 2003, Weisser executed an Agreement of Purchase and Sale to purchase the Property, which was later executed by Cullom on behalf of CP Hazard on October28, 2003. [See the "Weisser Agreement" attached hereto as Exhibit D.] Section 12.02 of the Weisser Agreement recognizes Wal-Mart's right of first refusal, providing as follows:

> 12.02 RIGHT OF FIRST REFUSAL: Wal-Mart has a
> right of first refusal to purchase the Property as specified

4

> and outlined in the Wal-Mart Lease. Any obligation of the
> Seller and Buyer hereunder is contingent upon Wal-Mart
> not exercising such right. If Wal-Mart does exercise such
> right, this Agreement shall be of no force and effect.
> (Emphasis in original.)

The Weisser Agreement further provides in Section 2.00.A. that "[o]n or before November 5, 2003, a $500,000 Letter of Credit ... shall be delivered to Seller...." However, Weisser defaulted on his contractual obligation to timely provide CP Hazard with his letter of credit. Weisser did not deliver a letter of credit to CP Hazard until November 25, 2003, twenty (20) days after the deadline. [See "Letter of Credit" attached hereto as Exhibit E.]

Pursuant to its right of first refusal as set forth in the Lease, Wal-Mart had twenty (20) days from receipt of the Weisser Agreement to execute and deliver to CP Hazard a purchase agreement of its own for the Property. On or about November 11, 2003, Wal-Mart executed and delivered to CP Hazard a Purchase Agreement for the Property (the "Wal-Mart Agreement") with the same price and other material terms as are contained in the Weisser Agreement. [The Wal-Mart Agreement is attached hereto as Exhibit F.] Wal-Mart therefore properly exercised its right of first refusal according to the right as set forth in the Lease.

Weisser was notified by a December 2, 2003 letter from attorney John B. Waters III, counsel for CP Hazard, that since Weisser had failed to timely provide a letter of credit pursuant to his contract, and since Wal-Mart had properly exercised its right of first refusal, Weisser's Agreement with CP Hazard was "of no force and effect." [The December 2, 2003 letter is attached hereto as Exhibit G.] Nevertheless, on January 15, 2004, Weisser filed this action against Wal-Mart and CP Hazard. In his Amended Complaint, Weisser seeks a declaration regarding the rights and duties of the parties, and

5

seeks specific performance of his purchase agreement with CP Hazard. In his Memorandum in Support of Motion for Summary Judgment, Weisser states for the first time that he also seeks recovery of "the difference between the now-increased interest rate compared with that [sic] he could have received at the time of the intended closing but for Wal-Mart's invalid exercise of its option."[1]  However, since Wal-Mart properly exercised its right of first refusal, and since Weisser defaulted under the terms of his own agreement, Wal-Mart is entitled to summary judgment on all of Weisser's claims.

## III.   ARGUMENT

### Summary Judgment Standard.

Fed. R. Civ. P. 56(c) authorizes summary judgment if the "pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." There is no dispute about any material fact in this case. The case turns entirely on whether Wal-Mart's exercise of its right of first refusal is deemed proper, and whether the Weisser Agreement is enforceable in light of Weisser's default under such agreement.

### A.   Wal-Mart Properly Exercised Its Right of First Refusal.

A contract giving a right of first refusal means that the holder has the right to take property at the same price, and on substantially the same terms, as those offered by a third party for the property. *See Brownies Creek Collieries, Inc. v. Asher Coal Mining Co.*, Ky., 417 S.W.2d 249, 251-52 (1967) (citations omitted). The right of first refusal is

---

[1] Weisser made no such claim in his Amended Complaint.

6

an enforceable contractual provision under Kentucky law. *See Id.* at 251 (1967) (citations omitted).

Weisser claims that Wal-Mart did not properly exercise its right of first refusal. More specifically, Weisser argues that the Wal-Mart Agreement has terms and conditions that are not <u>identical</u> to the provisions in the Weisser Agreement. The controlling law on this issue is addressed in Kentucky case law. In *Brownies Creek, supra*, the court stated:

> A contract provision giving simply the "right of first refusal" (as here), without any qualifying terms, means according to general custom and practice that the holder has the right to elect to take the property at the same price and on the same terms and conditions as those of an offer by a third person that the owner is willing to accept. *Corbin on Contracts*, Vol. 1A, section 261, pp. 470, 477, 478. (Footnote omitted.) The agreement is not void for failure to specify definite terms and conditions of the acquisition, because they will be supplied by the third person's offer. However, this presupposes that the holder of the right of first refusal can and will take the property on the same terms and conditions as set out in the third person's offer. Of course if the holder of the right of first refusal cannot meet exactly the terms and conditions of the third person's offer, <u>minor variations which obviously constitute no substantial departure should be allowed</u>. And defeat of the right of refusal should not be allowed by use of special, peculiar terms or conditions not made in good faith. But if a <u>material</u> variation from <u>bona fide</u> terms and conditions should be necessary the right of refusal will fail as impossible of performance.

417 S.W.2d at 252 (emphasis added).

It is clear under Kentucky law that in order to properly exercise a right of first refusal, the holder of such right is <u>not</u> required to execute an agreement with the <u>exact</u> same terms and conditions as contained in the third party's offer. Rather, variations from the third party's terms and conditions will not forfeit the holder's proper exercise of the right so long as the variations are not "material" and do not constitute a "substantial

7

departure" from the third party's "bona fide" terms. *See Brownies Creek, supra*, 417 S.W.2d at 252.

In this case, Wal-Mart exercised its right of first refusal by executing and delivering to CP Hazard a purchase agreement within twenty (20) days of Wal-Mart's receipt of a copy of the Weisser Agreement. This was a proper exercise of the right of first refusal since the Wal-Mart Agreement does not contain any <u>material</u> variations from the <u>bona fide</u> terms and conditions in the Weisser Agreement.

In paragraphs 17 and 18 of his Amended Complaint, and in his Memorandum in Support of Motion for Summary Judgment, Weisser notes four variations between the Wal-Mart and Weisser Agreements, which he labels as "major differences" between the two contracts.[2] However, since the four variations that Weisser points to in the Wal-Mart Agreement are not "material" and do not constitute a "substantial departure" from "bona fide" terms in the Weisser Agreement, they do not defeat Wal-Mart's proper exercise of its right of first refusal. *See Brownies Creek, supra*, 417 S.W.2d at 252. Importantly, all of Weisser's arguments relate to contingencies in the Wal-Mart Agreement. As will be discussed below, mere contingencies - which do not affect price - are not material.

### Inspection Period

First, Weisser argues that the Wal-Mart Agreement sets forth an inspection period during which Wal-Mart may withdraw at any time, and that the Weisser Agreement provides for no such inspection period. (Amended Complaint, ¶ 17.A; Weisser Memorandum in Support of Motion for Summary Judgment, p.3.) On the contrary,

---

[2] Given that the contracts are rather lengthy and contain literally hundreds of provisions, the fact that Weisser can cite to only four alleged "differences" speaks volumes.

8

Sections 3.00.D. and 3.01 of the Weisser Agreement do provide for an opportunity to survey and examine title.[3] Further, a provision for due diligence does not render an exercise of the right of first refusal improper. *See, e.g., Beavers Service, Inc. v. Norris*, 470 A.2d 312, 314 (D.C. Ct. App. 1983) (holding that the agreements of the rightholder and third party were "identical in all material aspects" even though the rightholder's agreement had a provision allowing it "30 days in which to make an economic feasibility study and permitting its withdrawal if the study yielded unsatisfactory results"). Finally, to the extent Weisser is attempting to argue that his agreement provides that the purchase price must be tendered without an inspection or due diligence period (which is not true given the "Review Period" he obtained through the Letter of Intent), it would be glaringly peculiar through its omission of a standard real estate provision. The omission of a bona fide term cannot be used to defeat a right of first refusal. *See Brownies Creek, supra*. In his deposition, Weisser conceded that the purchase agreement he tendered to Wal-Mart was unusual and not his standard form agreement. [Michael Weisser Depo., p. 59.] Weisser produced his standard form agreement in the course of discovery and, importantly, it provides for an inspection period in Section 10.01. [See "Weisser's Standard Form" attached hereto as Exhibit H). Pursuant to *Brownies Creek, supra*, a "defeat of the right of first refusal should not be allowed by use of special, peculiar terms or conditions not made in good faith" and only bona fide terms and conditions are to be considered in determining whether a material variation exists. 417 S.W.2d at 252 (emphasis added).

---

[3] As set forth in Section B below, Weisser also had a "Review Period" which gave him approximately 30 days to inspect the property and to withdraw at any time pursuant to his Letter of Intent with CP Hazard.

9

## Forfeiture of Deposit

Second, Weisser claims that the Wal-Mart Agreement allows for Wal-Mart to keep the $500,000 deposit in the event of default, while the Weisser Agreement provides that CP Hazard is entitled to keep the $500,000 down payment if a default occurs. (Amended Complaint, ¶ 17.B;   Weisser Memorandum in Support of Motion for Summary Judgment, p.3.) Weisser's argument is simply wrong and Wal-Mart is at a loss to explain how Weisser reaches such a conclusion. Nowhere in the Wal-Mart Agreement does is state that Wal-Mart gets to keep its deposit in the event of default. To the contrary, it states that Wal-Mart is relieved of any <u>further</u> obligation in the event of default. In other words, the Wal-Mart Agreement provides that Wal-Mart does not have to go <u>forward</u> with purchasing the property in the event of a default. It does not say that Wal-Mart is entitled to a refund of a <u>previously-paid</u> deposit. Since the Wal-Mart Agreement provides that the deposit was to be paid <u>up front</u> and to an escrow agent, Wal-Mart is not entitled to a refund in the event of default. Weisser's argument to the contrary is completely misplaced.

Even if Weisser's assertions were true (which they are not), a forfeiture provision pertaining to a deposit is merely another contingency - it does not go to the price of the property, and therefore does not constitute a "material" difference. *See Northwest Television Club, Inc. v. Gross Seattle, Inc.*, 634 P.2d 837 (Wash. 1981) (citing cases in which material variations were found based on differences in the <u>price</u> of the property). The case law is clear that price is the most important factor and it is undisputed that the Wal-Mart Agreement and the Weisser Agreement contain the same price.

10

### Environmental Contingencies

Third, Weisser points to provisions in the Wal-Mart Agreement which provide that CP Hazard is to make representations about, and is obligated to remediate any costs associated with, the environmental conditions of the property. (Amended Complaint, ¶ 17.C; Weisser Memorandum in Support of Motion for Summary Judgment, p.4.) Weisser argues that his purchase agreement contains no such terms. Again, Weisser's argument fails to tell the whole story. The fact of the matter is that Weisser's Letter of Intent similarly contained an environmental contingency and gave him the opportunity to withdraw from the agreement if he was not satisfied with the environmental condition of the property during his "Review Period." This will be discussed more thoroughly in Section B.

Most importantly, to the extent that the Weisser Agreement is deemed not to include an environmental contingency, it is peculiar and lacking of a "bona fide" term. It must be noted that Weisser's Standard Form of Agreement <u>does</u> contain an environmental contingency provision. [See Exhibit H.] The omission of a standard provision such as this one cannot be used to defeat Wal-Mart's exercise of its right of first refusal.[4] *See Brownies Creek, supra.*

### Letter of Credit

According to Weisser, the fourth "major difference" between the Wal-Mart and Weisser purchase agreements is the fact that the Wal-Mart Agreement provides that its $500,000 letter of credit is to be held in escrow, while the Weisser Agreement states that

---

[4] It would be unheard of for one to offer to purchase a 24 million dollar parcel of property without any environmental contingencies.

11

he is to deliver a $500,000 irrevocable letter of credit directly to CP Hazard.  (Amended Complaint, ¶ 17.D.)  This difference is not material.  Whether a letter of credit is to be held by an escrow agent or by a seller is an insignificant term which has no effect on the purchase price of the property.  *See Northwest Television Club, supra.*  Therefore, this minor variation cannot be used to defeat Wal-Mart's exercise of its right of first refusal. *See, e.g., Vincent v. Doebert*, 539 N.E.2d 856, 861-62 (Ill. App. 1989) (holding that a rightholder's letter of credit and guarantee does not have to be identical to the third party offeror's, so long as it meets the "security aspect" of the third party's offer).

Moreover, since Section 2.01 of Weisser's Standard Form provides that the deposit is to be held in escrow [see Exhibit H], it is apparent that Weisser considered this a standard and bona fide term.  The omission of such a term from his agreement cannot be used to prevent Wal-Mart's exercise of its right of first refusal.  *See Brownies Creek, supra.*

As set forth above, Wal-Mart properly exercised its right of first refusal by executing a purchase agreement with terms not materially different from the terms contained in the Weisser Agreement.  Following such exercise, any rights that Weisser had under his agreement with CP Hazard were terminated.[5]

In *Urban Hotel Management Corp. v. Main & Washington Joint Venture*, 494 N.E.2d 334, 337 (Ind. App. 1986), the court held that "once [the lessee] properly exercised the right of first refusal, [the third party's] rights to the property were completely cut off."  (Citation omitted).  Likewise, in the present case, once Wal-Mart exercised its right of first refusal (pursuant to the method of exercise as set forth in the

_____

[5] The Weisser Agreement concedes this point in Section 12.02.

12

Lease) by executing and delivering a purchase agreement to CP Hazard, Weisser lost any claim to the property. In other words, any rights that Weisser may have had under the purchase agreement were terminated upon Wal-Mart's proper exercise of its right of first refusal.

**B.      Weisser's Purchase Agreement Cannot Be Viewed In a Vacuum, But Must Be Examined in Conjunction With the Letter of Intent.   When Weisser's Agreement Is Viewed In Whole, Rather Than In Part, Any Difference Between the Weisser Agreement and the Wal-Mart Agreement Disappears.**

Before executing his purchase agreement, Weisser signed a Letter of Intent with CP Hazard. The Weisser Agreement must be viewed in conjunction with this Letter of Intent. *See FS Investments, Inc. v. Asset Guaranty Ins. Co.*, 196 F. Supp. 2d 491 (E.D. Ky. 2002) (applying Kentucky law) (looking at both the letter of intent and the purchase agreement to determine the terms of the deal). The Letter of Intent addressed the very contingencies which Weisser is complaining about in the Wal-Mart Agreement, including an inspection period and environmental contingencies. In other words, when Weisser's Letter of Intent is viewed in conjunction with his purchase agreement, it is clear that he had the same contingencies in his "deal" with CP Hazard that he now claims negates Wal-Mart's exercise of the right of first refusal. Therefore, Weisser cannot argue that the terms in the Wal-Mart Agreement are materially different from his own agreement with CP Hazard, and he cannot defeat Wal-Mart's proper exercise of its right of first refusal on this basis.

<u>**Inspection Period**</u>

Sections 3 and 5 of the Letter of Intent gave Weisser a "Review Period" and a right to inspect the Property. Moreover, as stated previously, Section 4 of the Letter of Intent also required CP Hazard to provide Weisser with several documents [see Exhibit

B], which CP Hazard complied with by sending Weisser copies of a survey, title policy, standard form agreement, payment and performance bond, utility letter, zoning letter, Wal-Mart lease agreement, and an environmental report [see Exhibit C]. Weisser had the right to review all of these documents and pursuant to Section 3 of the Letter of Intent, could terminate his obligations under the agreement "with no further liability by written notice delivered on or before the expiration of the Review Period." [See Exhibit B.] This is the same type of provision about which Weisser complains in the Wal-Mart Agreement.

Weisser was therefore given the same right of inspection in the Letter of Intent that he complains was only provided for in the Wal-Mart Agreement. His argument that the Wal-Mart Agreement contains a material variation from his own is completely misplaced.

### Environmental Contingencies

Weisser's Letter of Intent also addresses environmental contingencies. Section 2.B. of the Letter of Intent provides: "It is the express intent that Buyer ... waive, during the Review Period, all contingencies to the purchase of the Property, assuming that the status of title, environmental, etc. not adversely change...." (emphasis added). In other words, in his Letter of Intent, Weisser does not waive any environmental contingencies relating to the Property. If he was not satisfied with the environmental condition of the Property, he could walk away at any time during the Review Period. His argument that the Wal-Mart Agreement contains a "major difference" on this issue is not valid.

Moreover, among the information that was provided by CP Hazard to Weisser pursuant to Section 4 of the Letter of Intent was a detailed Phase I Environmental Report.

14

[See Phase I Environmental Report attached hereto as Exhibit I.]   The Phase I Environmental Report was a detailed environmental site assessment prepared by S&ME, Inc. in May, 2003.   Since this report contains a thorough and recent review of the environmental condition of the Property, and reaches the conclusion that it is environmentally safe, it insulates the parties from any unexpected environmental contingencies.   This further negates any discrepancies between the environmental contingency provisions in the parties' purchase agreements.   In effect, the environmental report of S&ME makes environmental conditions on the Property a complete non-issue and Weisser's argument otherwise is yet another attempt to get this Court to solely focus of specific provisions without examining the big picture and understanding all of the facts and circumstances surrounding this transaction.   Pursuant to the Letter of Intent, Weisser had the opportunity to review the environmental report prior to committing to purchase the Property.   He cannot now be heard to complain that Wal-Mart seeks the same opportunity.

### C.    The Weisser Agreement Is Not Enforceable.

Section 2.00.A. of the Weisser Agreement provides: "On or before November 5, 2003, a $500,000 Letter of Credit ... shall be delivered to Seller...."  [See Exhibit D.] Weisser defaulted on this obligation under his own agreement by failing to timely provide CP Hazard with a letter of credit. A letter of credit was not delivered by Weisser to CP Hazard until November 25, 2003, twenty (20) days after the deadline for such delivery.   Thereafter, Weisser was notified by a December 2, 2003 letter from the attorney for CP Hazard, John B. Waters III, stating that since Weisser had failed to timely provide a letter of credit pursuant to his contract, Weisser's Agreement with CP Hazard was "of no force and effect."  [See Exhibit G.]  Thus, whether or not Wal-Mart properly

15

exercised its right of first refusal is in fact immaterial since the Weisser Agreement is unenforceable due to Weisser's default thereunder. *See FS Investments, Inc., supra*, 196 F. Supp. 2d at 498-99 (E.D. Ky. 2002) (holding that under Kentucky law the determination of whether time is "of the essence" in a given contract may be resolved on summary judgment, and that if it is found that time is of the essence and fulfillment is not met within that time, the contract is void) (citations omitted).

Two final points merit discussion. First, the seller of the Property, CP Hazard, has consistently taken the position that Wal-Mart properly exercised its right of first refusal. Specifically, in his deposition, Miles Cullom - the principal of CP Hazard - stated that he thought Wal-Mart had correctly exercised its right of first refusal. [Cullom Depo., p. 48.] Cullom testified that he believes that price is "the most important thing" in exercising a right of first refusal, and stated that when he determined that the price in the Wal-Mart Agreement was the same as the price in the Weisser Agreement, he was satisfied. [Id.] Cullom stated that he believes Weisser is "making technicalities out of the differences in the contracts." [Id. at 53.]

Further, Robert Talbott, the real estate developer and broker who assisted Cullom in locating a buyer for the property, and who is also an attorney, also believes that Wal-Mart properly exercised its right of first refusal. [Robert Talbott Depo., pp. 36, 55.] He reached this conclusion after examining both contracts. Based on his belief, he returned Weisser's belated letter of credit back to him. [Id.]

Second, in his memorandum, Weisser relies almost exclusively on the case of *Jones v. White Sulphur Springs Farm, Inc.*, Ky. App., 605 S.W.2d 38 (1980), for his

16

argument that Wal-Mart failed to properly exercise its right of first refusal. Weisser's reliance on the *Jones* case for such an argument is misplaced.

In *Jones*, the court cited *Brownies Creek, supra*, for the principle that only material variations should be considered when determining whether a holder has properly exercised its right of first refusal.[6]  605 S.W. 2d at 41.  Applying this rule, the court held that variations in the terms of the rightholder's offer as to relinquishment of the right to a lien and payments for damages were material.   These terms are not the mere contingencies which are at issue in the present case. Rather, as discussed previously, the variations about which Weisser complains are not material, and in some cases are not even "variations" when Weisser's agreement is considered as a whole (i.e., in conjunction with his Letter of Intent).  That Weisser can find no case law to support his argument that the particular "variations" he claims are material is telling.

### D.      Weisser Is Not Entitled To An Increased Interest Rate.

In his memorandum, Weisser claims for the first time that he is entitled to "the difference between the now-increased interest rate compared with that [sic] he could have received at the time of the intended closing but for Wal-Mart's invalid exercise of its option." Weisser's Amended Complaint did not include such a claim for relief, and Weisser has not presented any facts or set forth any arguments entitling him to such a recovery. Quite simply there is nothing in the parties' contracts or the law which would allow him to recover such speculative damages for Wal-Mart exercising a legitimate right

---

[6] The *Jones* case also reinforces the *Brownies Creek* holding that a court should only consider material variations from "bona fide" terms and conditions in the third party's offer. 605 S.W. 2d at 41.

17

of first refusal.  This is particularly so given that Weisser was fully aware of Wal-Mart's right of first refusal at the time he entered into his agreement.

## IV.    CONCLUSION

For the foregoing reasons, Wal-Mart's Motion for Summary Judgment must be granted, and Weisser's Motion should be denied.

Respectfully submitted,

W. Craig Robertson III
Noelle M. Holladay
WYATT, TARRANT & COMBS, LLP
250 West Main Street, Suite 1600
Lexington, KY 40507-1746
859.233.2012

COUNSEL FOR WAL-MART

### CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing has been served upon the following, by Facsimile and U.S. mail, on this the 30th day of June, 2004:

John F. Kelley, Jr.
Bradford L. Breeding
Farmer, Kelley, Brown, Williams & Breeding
502 W. Fifth Street
P.O. Drawer 490
London, KY 40743-0490

Jon Woodall
McBrayer, McGinnis, Leslie & Kirkland, PLLC
201 East Main Street, Suite 1000
Lexington, KY 40507-2003

_____

COUNSEL FOR WAL-MART

30330175.1