UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO.  04-15

MICHAEL H. WEISSER,                                                                    PLAINTIFF

v.                                  **OPINION & SUMMARY JUDGMENT**

WAL-MART REAL ESTATE BUSINESS TRUST
and CP HAZARD ASSOCIATES LIMITED PARTNERSHIP,                    DEFENDANTS

* * * * * * * * *

This matter is before the Court on the cross-Motions for Summary Judgment of the Plaintiff

Michael H. Weisser ("Weisser") (Rec. No. 23) and the Defendant Wal-Mart Real Estate Business

Trust ("Wal-Mart") (Rec. No. 25).

**I.        FACTS.**

**A.        Wal-Mart's Right of First Refusal.**

Pursuant to a lease agreement (the "Lease Agreement"), Wal-Mart leased certain property

located in Hazard, Kentucky from Co-Defendant CP Hazard Associates Limited Partnership

("CPH").  (Rec. No. 24, Pf.'s Mem. on Summ. J., Ex. 1).  The Lease Agreement granted Wal-Mart

the following "right of first refusal"on the property:

> In the event [CPH] enters into an agreement to sell the Demised Premises to an
> unrelated third party (said agreement is hereafter referred to as the "Sales
> Agreement"), it shall give [Wal-Mart] a Right-of-First-Refusal to purchase the
> Demised Premises, on the same terms and conditions provided in the Sales
> Agreement. [Wal-Mart] shall have twenty (20) days after receipt of a copy of such
> agreement to exercise such right, which [Wal-Mart] shall do by executing and
> delivering to [CPH] an agreement containing the same business terms and conditions
> as the Sales Agreement. If [Wal-Mart] shall not deliver such executed agreement to
> [CPH] within such twenty (20) day period, then [Wal-Mart] shall be deemed to have
> failed to exercise such right with respect to the Sales Agreement.

(Rec. No. 24, Pf.'s Mem. on Summ. J., Ex. 1, Section 32, ¶ N., p. 19).

**B.      Weisser-CPH  Letter of Intent.**

On or about October 8, 2003, Weisser and CPH executed a letter of intent (the "Letter of Intent") outlining the terms upon which Weisser would be willing to make a formal written offer to purchase the property. (Rec. No. 26, Wal-Mart Mem. on Summ. J., Ex. B).   The Letter of Intent provided that the purchase price of the property would be  $24,512,353.  (Rec. No. 26, Wal-Mart Mem. on Summ. J., Ex. B, ¶ 2(A)).

Pursuant to the Letter of Intent, Weisser was required to provide written notice of his intent to purchase the property prior to the expiration of a "Review Period" and failure to do so constituted a decision not to purchase the property.  (Rec. No. 26, Wal-Mart Mem. on Summ. J., Ex. B, ¶ 2(B)). The "Review Period" commenced October 5, 2003 and expired October 30, 2003.   (Rec. No. 26, Wal-Mart Mem. on Summ. J., Ex. B, ¶ 3).

The Letter of Intent also stated that, "[i]t is the express intent of the parties that [Weisser], with one exception, waive, during the Review Period, all contingencies to the purchase of the Property, assuming that the status of title, environmental, etc. not adversely change between the expiration of the Review Period and the date Wal-Mart takes occupancy and begins the payment of full minimum rent (the 'Wal-Mart Rent Payment Date')." (Rec. No. 26, Wal-Mart Mem. on Summ. J., Ex. B, ¶ 2(B)).

 CPH agreed to promptly provide a title report, a current survey, the Wal-Mart lease, evidence of compliance with zoning, local restrictions and building permits, information regarding any pending or threatened litigation,  all agreements relating to the property and any other document

Weisser reasonably requested within the Review Period.   (Rec. No. 26, Wal-Mart Mem. on Summ. J., Ex. B, ¶ 4).  CPH agreed to permit Weisser to inspect the property and to examine surveys, permits, contracts, notes, mortgages and encumbrances pertaining to the property.  (Rec. No. 26, Wal-Mart Mem. on Summ. J., Ex. B, ¶ 5).  The Letter of Intent provided that both it and an Agreement of Purchase and Sale between the parties were subject to Wal-Mart's right of first refusal. (Rec. No. 26, Wal-Mart Mem. on Summ. J., Ex. B, ¶ 9).

On October 8, 2003, certain documents, including a survey, title policy and a "Phase I Environmental," were delivered to Weisser.  (Rec. No. 26, Wal-Mart Mem. on Summ. J., Ex. C).

### C.    Weisser-CPH Agreement of Purchase and Sale

On or about October 28, 2003, Weisser and CPH entered into a Agreement of Purchase and Sale ("Agreement of Purchase and Sale") by which CPH agreed to sell Weisser the same Hazard property that was the subject of the Wal-Mart Lease Agreement. (Rec. No. 26, Wal-Mart Mem. on Summ. J., Ex. D).  The Agreement provided that the purchase price would be paid as follows:

A)    On or before November 5, 2003, Weisser would deliver a $500,000 Letter of Credit to CPH which would be in effect until the closing and could be drawn upon by CPH if Weisser defaulted under the Agreement.

B)    On the Closing Date, Weisser was required to pay  $24,512,353.

(Rec. No. 26, Wal-Mart Mem. on Summ. J., Ex. D, ¶ 2.0).

Weisser had the right to examine the survey of the property until October 30, 2003 and to terminate the agreement if he disapproved of the survey. In such event, the Letter of Credit would be returned to Weisser.  (Rec. No. 26, Wal-Mart Mem. on Summ. J., Ex. D, ¶ 3.01).  In the section of the Agreement titled "Representations and Warranties of Seller," Environmental Hazards," the Agreement states "(Deleted)."  (Rec. No. 26, Wal-Mart Mem. on Summ. J., Ex. D, ¶ 6.01(M)).

3

The Agreement provided that if the transaction failed to close due to Weisser's refusal or default, then CPH could draw upon the Letter of Credit and Weisser would then be relieved of all obligations. (Rec. No. 26, Wal-Mart Mem. on Summ. J., Ex. D, ¶ 9.04). The Agreement provided that Wal-Mart had a right of first refusal to purchase the Property as specified in the Lease Agreement and that the parties' obligations under the Agreement were contingent upon Wal-Mart not exercising that right. The Agreement further provided that, if Wal-Mart did exercise that right, then the Agreement would be of no force and effect. (Rec. No. 26, Wal-Mart Mem. on Summ. J., Ex. D, ¶ 12.02).

### D.   Wal-Mart's Offer.

On or about November 11, 2003, Wal-Mart faxed a Purchase Agreement (the "Wal-Mart Offer") to CPH. (Rec. No. 26, Wal-Mart Mem. on Summ. J., Ex. F). The Wal-Mart Offer provided for the same purchase price as the Weisser Agreement of Purchase and Sale to be paid in the following manner:

A)   Wal-Mart would pay a deposit of $500,000 to an escrow agent to be held in an interest-bearing account with the interest accruing to Wal-Mart or the deposit would be paid in the form of an irrevocable letter of credit in favor of the escrow agent.

B)   the purchase price of $24,512,353 to be paid by certified check or wire transfer on the closing date.

(Rec. No. 26, Wal-Mart Mem. on Summ. J., Ex. F, ¶ 2).

The Wal-Mart Offer provided that, within three days of executing the agreement, CPH would deliver Wal-Mart a land survey. (Rec. No. 26, Wal-Mart Mem. on Summ. J., Ex. F, ¶ 4). The Wal-Mart Offer also provided that, within three days of executing the agreement, CPH would deliver Wal-Mart a copy of all title insurance policies and all recorded instruments referenced in the policy.

(Rec. No. 26, Wal-Mart Mem. on Summ. J., Ex. F, ¶ 5).

The Wal-Mart Offer provided the following with regard to a default by Wal-Mart:

If Wal-Mart should default in the performance of any of the terms and conditions of this Agreement, or if the Closing shall not occur through the fault of Wal-Mart, this Agreement shall be cancelled.

(Rec. No. 26, Wal-Mart Mem. on Summ. J., Ex. F, ¶ 11).

The Wal-Mart Offer further provided that Wal-Mart had a right of entry any time prior to closing to make surveys, site analyses and engineering studies.  (Rec. No. 26, Wal-Mart Mem. on Summ. J., Ex. F, ¶ 13).

The Wal-Mart Offer required CPH to deliver to Wal-Mart any environmental site assessments of the property.  (Rec. No. 26, Wal-Mart Mem. on Summ. J., Ex. F, ¶ 26).  The Wal-Mart Offer further provided that:

Seller hereby represents and warrants to Wal-Mart that the Land is not contaminated with, nor threatened with contamination from outside sources by, any chemical, material or substance to which exposure is prohibited, limited or regulated by any federal, state, county, local or regional authority or which is known to pose a hazard to health and safety and that the Land has never been used for a landfill, dumpsite, storage of hazardous substances or by a manufacturer of any product or for any other industrial use, except as disclosed in the Environmental Reports or any such use by Wal-Mart. . . This representation and warranty shall survive the Closing.  In the event that Wal-Mart notifies Seller (either before or after the Closing) that the representation set forth in this Section 26 is untrue and such notice is accompanied by a report from an engineering company with experience in evaluating such matters, then Seller shall either (a) terminate the contract; or (b) agree at its sole cost and expense subject to Seller's rights under law or equity to seek contribution from any party, to perform such acts as may be necessary to cause the Land to be in compliance with all federal, state and local environmental laws, rules and regulations.  In the event that Seller undertakes to cause the Land to be in compliance but fails so to perform such acts prior to the Closing, then Wal-Mart may postpone the Closing for such period of time as may be necessary for Seller to do so, or, postpone the Closing and undertake such actions as may be necessary to fulfill Seller's obligations hereunder and receive a credit against the Purchase Price for the expenses incurred by Wal-Mart in so fulfilling Seller's duties hereunder.  This Section 26 shall survive

5

the Closing.

(Rec. No. 26, Wal-Mart Mem. on Summ. J., Ex. F, ¶ 26).

Under the Wal-Mart Offer, Wal-Mart had 60 days after execution of the agreement to review the land and determine in its sole discretion whether to proceed with the closing. If Wal-Mart decided not to proceed with the Closing, it was required to provide written notice to CPH and "the Escrow shall be terminated." (Rec. No. 26, Wal-Mart Mem. on Summ. J., Ex. F, ¶ 31).

### E. Subsequent Correspondence.

On or about November 24, 3003, Northern Trust Bank issued a Letter of Credit in the amount of $500,000 with CPH as the beneficiary. (Rec. No. 26, Wal-Mart Mem. on Summ. J., Ex. E). On December 2, 2003, CPH's attorney wrote Weisser stating that he had failed to timely provide a $500,000 Letter of Credit as required under Agreement of Purchase and Sale with CPH and that, thereafter, Wal-Mart had exercised its right of first refusal. Thus, CPH's counsel stated, the contract between Weisser and CPH was no longer in force and effect. (Rec. No. 26, Wal-Mart Mem. on Summ. J., Ex. G).

On December 11, 2003, CPH's attorney wrote Wal-Mart requesting several changes in the Wal-Mart Offer. (Rec. No. 39, Pf.'s Reply, December 11, 2003 Letter Attached). Among those changes requested was the addition of the following language in paragraph 2(A) regarding the $500,000 Letter of Credit:

> The Letter of Credit shall be in a form approved by Seller and may be drawn upon by Seller in the event of a default by Wal-Mart.

With regard to the provisions in paragraph 11 regarding Wal-Mart's default, CPH requested that the paragraph be deleted and that following new provision be added:

6

In the event that this transaction fails to close solely due to a refusal or default on the part of Wal-Mart, then and in such event, the Seller may draw upon the Letter of Credit, and, thereafter, Wal-Mart shall be relieved from all further obligations under this Agreement and Seller shall have no further claims against Wal-Mart for specific performance, for damages, or otherwise relating to or arising out of this Agreement.

(Rec. No. 39, Pf.'s Reply, December 11, 2003 Letter Attached).

   **F.     This Action.**

On or about January 14, 2004, Weisser filed this action against CPH and Wal-Mart seeking a declaration as to the rights and duties of the parties with regard to the property. (Rec. No. 1, Complaint; Rec. No. 2, Amended Complaint).  Weisser sought specific performance and damages for breach of contract against CPH.  Weisser also sought payment of his attorney's fees by CPH pursuant to the Agreement of Purchase and Sale.   CPH filed a Counterclaim against Weisser and Cross-claim against Wal-Mart also seeking a declaration of the parties' rights with regard to the property. (Rec. No. 4).

On or about August 9, 2004, Weisser and CPH entered into a Settlement Agreement by which they agreed to fully and finally settle their claims against each other.  (Rec. No. 36, CPH Response, Settlement Agreement Attached).  With the Settlement Agreement, CPH agreed sell the property to Weisser under the same economic terms set forth in the Agreement of Purchase and Sale executed on October 28, 2003.  (Rec. No. 36, CPH Response, Settlement Agreement Attached, ¶ 1). The Settlement Agreement further provides that, if this Court determines that Wal-Mart has a right to purchase the property, Weisser will sell the property to Wal-Mart under the same terms and conditions as contained in the Agreement of Purchase and Sale.  (Rec. No. 36, CPH Response, Settlement Agreement Attached, ¶ 2).

In the Settlement Agreement, Weisser waives any and all claims against CPH which have been asserted in this action including all claims for damages and attorney's fees. (Rec. No. 36, CPH Response, Settlement Agreement Attached, ¶ 5).  The Agreement provides that "Weisser and [CPH] will execute an Agreed Order Dismissing as Settled their respective claims and further dismissing [CPH] from" this action.  (Rec. No. 36, CPH Response, Settlement Agreement Attached, ¶ 5).

## II.    STANDARD ON SUMMARY JUDGMENT.

Under Fed. R. Civ. P. 56, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim.  *Id.* at 322-25.  Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of

8

the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, the court must view the facts and draw all inferences therefrom in a light most favorable to the nonmoving party. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The moving party must show conclusively that there is no genuine issue of material fact. *Id.* However, at the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter. *Wiley v. U.S.*, 20 F.3d 222, 226 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249). The Court is not to judge the evidence or make findings of fact. *60 Ivy Street Corp.,* 822 F.2d at 1435-36. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F.Supp.2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

### III.    ANALYSIS.

#### A.    Wal-Mart's Exercise of Right of First Refusal.

The issue here is whether Wal-Mart properly exercised its right of first refusal under the

9

Lease Agreement and, therefore, has a right to purchase the property. The Lease Agreement provides that it shall be interpreted according to Kentucky law (Rec. No. 24, Pf.'s Mem. on Summ. J., Ex. 1, Lease, ¶ 32(M)) and the parties do not appear to dispute that Kentucky is the governing law.

In *Brownies Creek Collieries, Inc. v. Asher Coal Mining Co.*, 417 S.W.2d 249 (Ky. 1967), Kentucky's highest court stated the following:

> A contract provision giving simply the 'right of first refusal' (as here), without any qualifying terms, means according to general custom and practice that the holder has the right to elect to take the property at the same price and on the same terms and conditions as those of an offer by a third person that the owner is willing to accept. . . The agreement is not void for failure to specify definite terms and conditions of the acquisition, because they will be supplied by the third person's offer. However, this presupposes that the holder of the right of first refusal can and will take the property on the same terms and conditions as set out in the third person's offer. Of course if the holder of the right of first refusal cannot meet exactly the terms and conditions of the third person's offer, minor variations which obviously constitute no substantial departure should be allowed. And defeat of the right of refusal should not be allowed by use of special, peculiar terms or conditions not made in good faith. But if a material variation from bona fide terms and conditions should be necessary the right of refusal will fail as impossible of performance.

*Id*. at 252.

In *Brownies Creek*, the Court further stated that "[i]t would be preferable, rather than a resort to custom and practice, that a right of first refusal be expressed in such manner that a stranger to the transaction, upon examining the instrument from which the right arises, may ascertain when the right arises, how it is to be exercised, and if asserted what the result will be. *Id.* at 252 n.1.

Looking to the instrument conveying the right of first refusal, the Lease Agreement expressly provides that Wal-Mart must exercise its right of first refusal by "executing and delivering to [CPH] an agreement containing the same business terms and conditions as" the Weisser Agreement of Purchase and Sale. Under the express terms of the Lease Agreement, Wal-Mart failed to properly

exercise its right of first refusal because its offer did not contain the same terms and conditions as Weisser's agreement. The most significant variations are found in the default and environmental provisions.

Under the Wal-Mart Offer, if it defaults under the agreement, the agreement is cancelled. The Wal-Mart Offer does not, however, provide that it forfeits its $500,000 deposit. Under the Weisser Agreement of Purchase and Sale, however, if Weisser defaults under the contract, he forfeits his $500,000 deposit.

As to the environmental provisions, under the Wal-Mart Offer, CPH is required to make certain representations regarding the environmental condition of the property and, if such representations are determined by Wal-Mart to be untrue, then CPH can either cancel the contract or perform any acts necessary to bring the land in compliance with applicable law. CPH's environmental liability survives the closing of the transaction. Under the Weisser Agreement of Purchase and Sale, CPH makes no environmental representations or warranties and assumes no post-closing liability for the environmental condition of the property.

Wal-Mart argues that, under Kentucky law, even though its offer did not contain the same terms and conditions as Weisser's Agreement of Purchase and Sale, Wal-Mart nonetheless properly exercised its right of first refusal because the variations between the agreements are not material. With regard to the variations in the default provision, Wal-Mart argues that its agreement does not permit it to keep the deposit in the event of its default. It also argues that, even if it could keep the deposit, a forfeiture provision does not go to the price of the property and, therefore, is not material.

While the Weisser Agreement of Purchase and Sale expressly provides that Weisser will deliver a $500,000 Letter of Credit to CPH and that it could be drawn upon by CPH if Weisser

11

defaulted under the terms of the agreement, the Wal-Mart Offer never states that CPH may keep the $500,000 deposit if Wal-Mart defaults under the agreement.  The $500,000 penalty for default is a material provision.  The value received by CPH in the event of the purchaser's default is not the same under both contracts.  Under the Weisser Agreement of Purchase and Sale, CPH would receive $500,000 more if the purchaser defaults. In fact, in negotiations that occurred after Wal-Mart delivered its offer to CPH, CPH specifically requested the deposit and default provisions of the Wal-Mart Offer be amended to provide that the $500,000 Letter of Credit could be drawn upon by CPH if Wal-Mart defaulted. (Rec. No. 39, Reply, December 11, 2003 Letter).

As to the environmental provisions of the agreements, it is undisputed that the Wal-Mart Offer requires CPH to make certain representations and warranties regarding the environmental condition of the property.  Furthermore, if any such representations or warranties are determined any time after closing to be untrue based on a report from an engineering company chosen by Wal-Mart, then CPH is required at its sole cost and expense to perform whatever acts may be necessary to bring the land into compliance with local, state and federal environmental laws, rules and regulations.  It is also undisputed that the Weisser Agreement of Purchase and Sale does not require CPH to make any environmental representations or warranties are to assume any post-closing liability for the environmental condition of the property.

Wal-Mart argues that Weisser's Letter of Intent contained the same provision as the Wal-Mart Offer because the Letter of Intent allowed Weisser to withdraw from the agreement if not satisfied with the environmental condition of the property during the "Review Period." A provision permitting the purchaser to withdraw from an agreement prior to closing is materially different, however, from a provision requiring the seller to assume post-closing liability for the environmental

12

condition of the property.

Wal-Mart also argues that the environmental report is a non-issue because, prior to executing his Agreement of Purchase and Sale, Weisser received a Phase I Environmental Report concluding that the property is environmentally safe. Even assuming that the report did conclude the environmental condition of the property was safe, it is still true that the Wal-Mart Offer required CPH to assume liability if that conclusion was wrong and that the Weisser Agreement of Purchase and Sale did not. This potential liability is a material provision.

Wal-Mart itself recognizes the significance of its environmental provision when it argues that, to the extent that the Weisser Agreement of Purchase and Sale is deemed not to include a similar provision, the Court should construe the Weisser Agreement of Purchase and Sale to be a bad faith offer. Wal-Mart argues that "[i]t would be unheard of for one to offer to purchase a 24 million dollar parcel of property without any environmental contingencies." (Rec. No. 26, Wal-Mart Mem. on Summ. J., p. 11 n.4). According to Wal-Mart, the environmental provision contained in its offer is so standard that, pursuant to *Brownies Creek*, the Weisser Agreement of Purchase and Sale should not defeat its right of refusal because the failure to include the same environmental provision renders the Weisser agreement a "peculiar" one not made in good faith.

It is true that courts have interpreted the matching requirements of rights of first refusal to mean that the holder of the right does not have to match unreasonable and immaterial terms in a third-party offer, where such terms are inserted merely to preclude the holder from matching the offer. *Brownies Creek*, 417 S.W.2d at 252 ("defeat of the right of refusal should not be allowed by use of special, peculiar terms or conditions not made in good faith"); *See also*, *Robert Nattress & Associates v. CIDCO*, 184 Cal.App.3d 55, 72 (Cal. Ct. App. 1986)("[i]f the literal matching

13

of terms were required, a triggering offeror could by offering some unique consideration such as . . . a bag of diamonds or a heard of Arabian horses, effectively defeat the lessee's right of first refusal.")

Here, however, there was nothing precluding Wal-Mart from matching Weisser's offer. In addition, there is no evidence in the record from which the Court can conclude that the environmental provision in the Wal-Mart Offer is so standard that the Court must construe the Weisser Agreement of Purchase and Sale as a bad faith offer. Weisser's decision not to make CPH warrant the environmental condition of the land or assume post-closing liability for the same is not so unreasonable or peculiar that the Court must conclude that Weisser's offer was made in bad faith or constructed solely to defeat Wal-Mart's right of first refusal.

The Wal-Mart Offer contained provisions that materially varied from the Agreement of Purchase and Sale executed by Weisser and CPH and that render it an inferior offer. Wal-Mart failed to properly exercise its right of first refusal under the Lease Agreement and, therefore, has no right to purchase the property.

### B.   Enforceability of Weisser Agreement.

Wal-Mart also argues that the Weisser Agreement of Purchase and Sale is not enforceable because Weisser defaulted under the agreement by failing to provide CPH with a $500,000 Letter of Credit on or before November 5, 2003 as required.  The Letter of Credit was not delivered until November 25, 2003.[1]

---

[1] Weisser argues that he did submit a letter of credit on November 7, 2003 and that, on November 10, 2003, CPH sent a letter requesting an additional provision.  A Letter of Credit with the additional provision was then delivered on November 25, 2003.  In addition, Weisser asserts that CPH suggested in a letter that the parties amend the Agreement of Purchase and Sale to provide that Weisser need not issue the Letter of Credit at all until within 5 days after Wal-Mart waives its right of first refusal. (Rec. No. 39, Reply, p. 13).

14

The sole parties to the Agreement of Purchase and Sale are Weisser and CPH.  Wal-Mart has not argued that it is a third party beneficiary of that agreement.  Instead, Wal-Mart argues that it has standing to enforce the provisions of the Weisser Agreement of Purchase and Sale because it "specifically contracted for this standing by obtaining a right of first refusal in its lease" with CPH.  (Rec. No. 35, Reply, p. 11). Wal-Mart's right of first refusal, however, is a right to purchase the property if certain conditions are met. If Wal-Mart had met those conditions, it would certainly have standing to assert that any agreement by CPH to sell the property to a third party is invalid. Having failed to properly exercise its right of first refusal, however, Wal-Mart does not have standing to the enforce the provisions of an agreement to sell between CPH and a third party.

Weisser has asked for a declaration that his agreement with CPH is valid and enforceable. CPH has not objected to that request. In its Counter- and Cross-claims, CPH asserts no position regarding the respective rights of the parties to this action and has not taken any such position in response to the cross-motions for summary judgment.   The Court, therefore, has no basis to deny Weisser's request for a declaration that his agreement with CPH is enforceable.

## C.    Damages.

In his Motion for Summary Judgment, Weisser asserts that he is entitled to a money judgment equal to the difference in the interest rate he would receive now compared with the interest rate he could have received at the time of the intended closing but-for Wal-Mart's invalid exercise of its option.  (Rec. No. 24, Pf.'s Mem. on Summ. J., p. 5).

Weisser does not state whether he believes it is Wal-Mart or CPH that is obligated to pay this amount or why.  In his Amended Complaint, Weisser asserted a breach of contract claim

15

against CPH only.  (Rec. No. 2).  Since the filing of his Motion for Summary Judgment, however, it appears that he and CPH have settled all claims in this action.  Thus, the Court assumes that Weisser does not seek a money judgment against CPH.  Weisser provides no basis for why Wal-Mart should be obligated to pay the amount sought. He  sought no such amount from Wal-Mart in his Amended Complaint.  Accordingly, the Court will DENY Weisser's request for a money judgment equal to the difference in the interest rate he would receive now compared with the interest rate he could have received at the time of the intended closing .

In his Motion for Summary Judgment, Weisser also asserts that he is entitled to be reimbursed by CPH for his attorney fees.  (Rec. No. 24, Pf.'s Mem. on Summ. J., p. 5). In light of his settlement agreement with CPH, the Court assumes that Weisser no longer seeks this relief and, thus, DENIES this request.

Accordingly, for all the above reasons, it is ORDERED AND ADJUDGED as follows:

1)      Weisser's Motion for Summary Judgment (Rec. No. 23) on the claims made in his Amended Complaint (Rec. No. 2) is hereby GRANTED to the extent that he seeks a declaration that Wal-Mart failed to properly exercise its right of first refusal under its Lease Agreement with Co-Defendant CPH and to the extent it seeks a declaration that the October 28, 2003 Agreement of Purchase and Sale between Weisser and CPH is valid and enforceable;

2)      The Court hereby DECLARES that: 1) Wal-Mart failed to properly exercise its right of first refusal under its Lease Agreement with CPH and; 2) the October 28, 2003 Agreement of Purchase and Sale between Weisser and CPH is valid and enforceable.

3) Weisser's Motion for Summary Judgment (Rec. No. 23) is DENIED to the extent it seeks any relief not requested in the Amended Complaint and to the extent it seeks payment of attorney's fees and a money judgment equal to the difference in the interest rate he would receive now compared with the interest rate he could have received at the time of the intended closing;

4) Wal-Mart's Motion for Summary Judgment (Rec. No. 25) is hereby DENIED;

5) Weisser's Motion for Oral Argument (Rec. No. 41) is hereby DENIED as moot; and

6) Within ten (10) days of the entry date of this ORDER, Weisser and CPH shall file an Agreed Order of Dismissal dismissing their respective claims against each other in this action or show cause why such claims should not be dismissed in light of the parties' Settlement Agreement.

Dated this 8th day of June, 2005.

**Signed By:**

**_Karen K. Caldwell_**

**United States District Judge**